IN RE the MARRIAGE OF: Robert P. FALK, Petitioner-Appellant,

v.

JoEllen FALK, Respondent.

Court of Appeals

*No. 90-0705-FT. Submitted on briefs August 1, 1990.—Decided September 18, 1990.*

(Also reported in 462 N.W.2d 547.)

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Cindra R. Carson* of *Hertel, Carson, White, Schilling & Barr, S.C.* of Eau Claire.

On behalf of the respondent, the cause was submitted on the brief of *James R. Duchemin* of *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.  Robert Falk appeals an order dismissing his motion to terminate maintenance payments previously ordered in a judgment of divorce.[1] Robert contends that the remarriage of his former wife, JoEllen Falk, terminated his obligation to pay maintenance and that the court erred by concluding that a void remarriage did not terminate maintenance. Because we conclude that a remarriage, even though unlawful in Wisconsin, is sufficient to terminate maintenance, we reverse the court's order and remand with directions.

Robert and JoEllen Falk had been married for sixteen years when their marriage was terminated in 1984.

---

[1]This is an expedited appeal under Rule 809.17.

The divorce judgment required Robert to make maintenance payments to JoEllen. JoEllen married Terry Utzig on June 28, 1988, in South Dakota. Utzig had previously been divorced in Wisconsin, and, under sec. 765.03(2), Stats., was not eligible to remarry for a period of six months from the date of the judgment of divorce. His marriage to JoEllen occurred during this six-month period and was therefore not a valid marriage in Wisconsin.

Robert continued to make the maintenance payments until April 1989 when he learned of JoEllen's remarriage. He then filed a motion requesting a court order terminating maintenance payments. A hearing on the motion was scheduled, adjourned on several occasions and ultimately held on October 4, 1989. During the time the motion was pending, JoEllen filed for an annulment of her marriage to Utzig. The court granted the annulment on August 30, 1989, concluding that JoEllen's marriage to Utzig was void under sec. 765.03(2), Stats. At the October 4, 1989, hearing, the court ruled that because JoEllen's marriage to Utzig was void and did not ripen into a valid marriage, the remarriage did not terminate Robert's obligation to pay maintenance. The court thus entered an order dismissing Robert's petition.

The issue presented is whether a void or voidable remarriage terminates a former spouse's obligation to pay maintenance. Resolution of this issue requires the construction of sec. 767.32(3), Stats., which provides: "After a final judgment requiring maintenance payments has been rendered and the payee has remarried, the court shall, on application of the payer with notice to the payee and upon proof of remarriage, vacate the order requiring such payments." The relevant facts are not in dispute.

The construction of a statute or the application of a statute to a particular set of facts is a question of law. *Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146, 147 (1979). Appellate courts decide questions of law without deference to the trial court's decision. *Ball v. District No. 4 Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).[2]

The purpose of statutory construction is to ascertain and give effect to the legislature's intent. *In re P.A.K.,* 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681 (1984). In construing a statute, first resort is to the language itself. *Id.* A statute is ambiguous if reasonably well-informed persons could understand it in more than one way. *Id.* at 878–79, 350 N.W.2d at 682.

We conclude that sec. 767.32(3), Stats., is ambiguous. A reasonably well-informed person could read "remarriage" to mean any remarriage. However, "remarriage" could also be read to mean a valid or legal remarriage. Thus, we will look to the scope, history, context, subject matter and object of the statute to ascertain the legislature's intent. *Midland Fin. Corp. v. DOR,* 116 Wis. 2d 40, 46, 341 N.W.2d 397, 400 (1983).

---

[2]JoEllen urges us to apply the abuse of discretion standard in reviewing the trial court's decision. JoEllen argues that despite the word "shall," termination of maintenance upon remarriage of the payee is not automatic but discretionary under sec. 767.32(3), Stats. *Rintelman v. Rintelman,* 118 Wis. 2d 587, 592, 348 N.W.2d 498, 500 (1984). We reject this argument because the court in *Rintelman* based its decision on the parties' stipulation that maintenance would continue regardless of whether the payee remarried.

Central to statutory construction is the rule that statutes must be construed to avoid absurd or unreasonable results. *State v. Pham,* 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987). Also, statutes relating to the same subject matter should be harmonized and construed together. *State v. Burkman,* 96 Wis. 2d 630, 642, 292 N.W.2d 641, 647 (1980).

Annulment is the proper procedure for setting aside both void and voidable marriages. *Lyannes v. Lyannes,* 171 Wis. 381, 392, 177 N.W. 683, 686 (1920); sec. 767.03, Stats. Under Wisconsin law, a judgment of annulment is treated like a judgment of divorce for maintenance and property division purposes. Sections 767.255 and 767.26, Stats. A spouse seeking maintenance after an annulment stands on equal footing with a spouse seeking maintenance after a divorce. Therefore, JoEllen could have requested maintenance in her annulment proceedings against Utzig. Wisconsin law does not provide that an individual can collect maintenance payments from more than one former spouse at any one time or that an individual may select which of two former spouses she will look to for maintenance payments. Accordingly, we conclude that the requirement that judges terminate maintenance in the event of remarriage is unconditional and must apply even though the second marriage was void or voidable under Wisconsin law.

JoEllen argues that because the court annulled their void marriage, she and Utzig were essentially cohabitating. She reasons that because cohabitation of a former spouse alone is not grounds for termination of maintenance, *Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 197, 327 N.W.2d 674, 678 (1983), her marriage to Utzig did not terminate maintenance. We disagree.

The legal theory of annulment is that no marriage ever existed. *In re Kinsella,* 327 N.W.2d 437, 440 (Mich. Ct. App. 1982). However, Wisconsin statutes concerning property division and maintenance obligations do not reflect this "relation back" theory. Rather, under Wisconsin law, annulments and divorces have the same practical purpose and legal effect. It would be inconsistent and inappropriate to employ the legal fiction that the marriage never existed for purposes of termination of maintenance when Wisconsin law rejects that legal fiction by authorizing maintenance awards in annulment proceedings. Accordingly, any maintenance rights to which JoEllen may be entitled must be asserted against her second spouse, Utzig.

Other factors persuade us that this conclusion is appropriate. First, Robert was not a party to the annulment proceedings and had no opportunity to object to the granting of the annulment. Robert's maintenance obligations should not be decided by proceedings over which he had no control. *See Flaxman v. Flaxman,* 273 A.2d 567, 570 (N.J. 1971). As the New Jersey court stated: "Courts have been particularly wary of applying the 'relation back' fiction where it might adversely affect the rights of innocent third parties." *Id.* at 569. Because Robert was not a party to the annulment proceedings and had no standing to challenge the application for annulment, we should not employ the legal fiction that the annulment dissolves the marriage as though the marriage had never taken place for the purpose of determining Robert's maintenance obligations.

Also, JoEllen knowingly entered an invalid marriage. We should not reward this violation of Wisconsin law by giving her two sources of support or allowing her

to choose between the two. *See Gaines v. Jacobsen,* 124 N.E.2d 290, 294 (N.Y. 1954).

Finally, Robert is entitled to rely on his former wife's new marital status in ordering his affairs. *See Flaxman,* 273 A.2d at 569. By marrying Utzig, JoEllen held herself out to be remarried, and Robert should be able to rely on that status. Otherwise, he could never be certain that the support responsibilities would not shift back to him because of the eventual annulment of the remarriage.

For these reasons we conclude that JoEllen's remarriage to Utzig, though void as a result of the annulment, was sufficient to terminate Robert's maintenance obligation. Any rights for continued support must now be asserted against Utzig because Robert's obligation is terminated by the provisions of sec. 767.32(3), Stats.

*By the Court.*—Order reversed and cause remanded.