IN the INTEREST OF JULIAN C.P., a person under the age of 18:

STATE of Wisconsin, Petitioner-Respondent,†

v.

JULIAN C.P., Respondent-Appellant.

Court of Appeals

*No. 94–0785. Submitted on briefs October 6, 1994.—Decided April 4, 1996.*

(Also reported in 549 N.W.2d 266.)

†Petition to review dismissed.

For the respondent-appellant the cause was submitted on the briefs of *Jack E. Schairer*, first assistant state public defender.

For the petitioner-respondent the cause was submitted on the brief of *Jodi Timmerman*, assistant corporation counsel of Janesville, and *Jodi Dabson Bollendorf*, assistant district attorney of Beloit.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   Julian C.P. appeals from an order entered February 24, 1994, which requires his mother to reimburse the county for the cost of his detention in a county facility. The State argues that the juvenile court had authority to make such an order pursuant to § 48.275(1), STATS., 1993-94,[1] which provides in part:

> If the court finds a child to be delinquent . . ., the court shall order the parents . . . to contribute toward the expense of post-adjudication services to the child the proportion of the total amount which the court finds the parents are able to pay.

Julian C.P. has a long history of delinquency and failure to comply with the juvenile court's dispositional orders. Twice before, his mother paid the cost of his detention, pursuant to court orders entered under § 48.275(1), STATS. On September 1, 1993, the juvenile court placed Julian on intensive supervision, following a determination that he was delinquent. He violated

---

[1] All references to ch. 48, STATS., in this opinion refer to ch. 48, STATS., 1993-94.

the terms of his supervision and the juvenile court placed him in secure detention for ten days. The court ordered his mother to pay the costs of this detention in the amount of $1,100. The court found that she had the ability to pay that amount based on her monthly income from SSI and AFDC grants of $2,388.82. We conclude that the juvenile court did not have authority under § 48.275(1) to require Julian's mother to pay the cost of his detention. We reverse.

Whether a juvenile court has authority under § 48.275(1), STATS., to require a parent to pay the cost of post-adjudication detention is a question of law which we decide without deference to the circuit court, except insofar as the court's reasoning is persuasive. *See State v. Koch*, 195 Wis. 2d 801, 811, 537 N.W.2d 39, 43 (Ct. App. 1995) (interpretation of a statute is a question of law).

We must determine the meaning of "post-adjudication services to the child," as used in § 48.275(1), STATS. The State acknowledges that placement in a secure detention facility is a "sanction," but argues that such a sanction is "intended to further the objectives of the Dispositional Order designed for the welfare of the child," citing *In Interest of B.S.*, 162 Wis. 2d 378, 392, 469 N.W.2d 860, 865-66 (Ct. App. 1991). Such acknowledgement begs the question: Does this type of sanction—detention in a secured facility—constitute a "post-adjudication service" within the meaning of the statute?

In this context, a "sanction" is "a restrictive measure used to punish a specific action or to prevent some future activity . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2009 (1993). In this sense,

533

any detention or imprisonment is a "sanction." Placement of a juvenile at Ethan Allen or Lincoln Hills is a "sanction." Imposing the cost of such placement on the parent of a delinquent child would impose ruinous costs. A construction of § 48.275(1), STATS., which would require—the statute reads, "shall"—this result would be unreasonable. We are not to construe statutes to require an unreasonable result. *See Falk v. Falk*, 158 Wis. 2d 184, 189, 462 N.W.2d 547, 548 (Ct. App. 1990). We cannot ignore, however, that in certain contexts, confinement and administrative sanctions are not considered punishment. *See State v. Killebrew*, 115 Wis. 2d 243, 247, 340 N.W.2d 470, 473 (1983) (confinement and other administrative penalties imposed by prison officials are not considered punishment for double jeopardy purposes). The State's argument that placement in a secure detention facility is intended to further the objectives of dispositional orders is not wholly unreasonable if "post-adjudication services" are limited to court-connected services. Because § 48.275(1) may be read as having more than one meaning, we conclude that the statute is ambiguous. *See Ervin v. City of Kenosha*, 159 Wis. 2d 464, 472, 464 N.W.2d 654, 657-58 (1991) (a statute is ambiguous if it may be read by reasonably well-informed persons to have more than one meaning).

The title of § 48.275, STATS., is: "Parents' contribution to cost of court and legal services." Court-connected services could conceivably include such measures as the court may have to take to enforce its dispositional orders. The title of a statute is not part of the law but may be resorted to in order to determine the legislature's intent. *Jungbluth v. Hometown, Inc.*, 192 Wis. 2d 450, 458, 531 N.W.2d 412, 415 (Ct. App.

1995), *rev'd on other grounds*, 201 Wis. 2d 320, 548 N.W.2d 519 (1996).

In construing ch. 48, STATS., we have previously held that it is appropriate to read together the provisions of the law to determine the legislature's intent as to a provision thereof. *In Interest of Antonio M.C.*, 182 Wis. 2d 301, 308-09, 513 N.W.2d 662, 665 (Ct. App. 1994). These statutes are *in pari materia* and should be read together. *See Riley v. Doe*, 152 Wis. 2d 766, 771, 449 N.W.2d 83, 84 (Ct. App. 1989). However, we read cost statutes strictly. *See, e.g., State v. Evans*, 181 Wis. 2d 978, 512 N.W.2d 259 (Ct. App. 1994).

The word "services" appears often in ch. 48, STATS. Section 48.02(17m), STATS., defines "[s]pecial treatment or care" to mean "professional *services* which need to be provided to a child or his or her family . . . . This term includes, but is not limited to, medical, psychological or psychiatric treatment, alcohol or other drug abuse treatment or other *services* which the court finds to be necessary and appropriate." (Emphasis added.) Each intake worker whose duties include investigation of child abuse and neglect must successfully complete training in "child abuse and neglect protective *services*." Section 48.06(1)(am)3, STATS. (emphasis added). State aid is provided to the counties for "court *services*." Section 48.06(4) (emphasis added). The staff of the department and the court shall "[m]ake an affirmative effort to obtain necessary or desired *services* for the child and the child's family . . . ." Section 48.069(1)(c), STATS. (emphasis added). The juvenile court in determining whether to waive its jurisdiction over a child charged with a delinquent act must consider, "[t]he adequacy and suitability of facilities, *services* and procedures available for treatment of the

535

child and protection of the public . . . ." Section 48.18(5)(c), STATS. (emphasis added). If needed, the services which the court and the department must provide a child determined to be delinquent include post-disposition individual or group counseling, homemaker or parent aide services, respite care, housing assistance, day care and parent skills training. Section 48.34(2m), STATS. The juvenile court may order that the child be provided and participate in alcohol or drug treatment or education. Section 48.34(13). The dispositional order shall contain "[t]he specific services or continuum of services to be provided to the child and family . . . ." Section 48.355(2)(b)1, STATS.

We conclude that § 48.275(1), STATS., is the "catch-all" provision which allows the juvenile court to require parents to contribute within their means to the cost of the *rehabilitative services* the court and the department provide the delinquent juvenile and his or her family; this provision does not include detention and placement costs at county facilities.[2] We therefore reverse the order from which Julian C.P. appeals.

*By the Court.*—Order reversed.

---

[2] Because we determine § 48.275(1), STATS., does not authorize such costs, we need not consider the arguments raised as to the parents' ability to pay and the use of contempt. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).