Michael JUNGBLUTH, Plaintiff-Respondent,†

v.

HOMETOWN, INC., a Wisconsin Corporation, Defendant-Appellant.

Court of Appeals

*No. 94–1523–FT. Submitted on briefs October 5, 1994.—Decided March 7, 1995.*

(Also reported 531 N.W.2d 412.)

†Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Quarles & Brady*, with *Eric J. Van Vugt, Michael D. Zeka, and Mitchell S. Moser*, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Terschan & Steinle, Ltd.*, with *Frank R. Terschan*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J. Hometown, Inc., appeals from a judgment, following a trial to the court, awarding damages to Michael Jungbluth resulting from what the trial court determined to be Hometown's violation of the Wisconsin Fair Dealership Law (WFDL). We con-

clude that the trial court's determination derived from an erroneous reading of § 135.04, STATS. We reverse.

## I. BACKGROUND

The essential facts are undisputed. Jungbluth and Hometown signed a lease agreement and a representative agreement in September 1990, by which Jungbluth agreed to operate a service station owned by Hometown. Under the agreements, Hometown reserved the right to install underground fuel storage tanks and, although not expressly provided, Jungbluth did not dispute that their agreements also allowed Hometown to remodel the station.

In November 1990, Hometown learned that some of the station's gas tanks were leaking. As required by state and federal regulations, Hometown immediately took steps to replace the tanks. During the replacement period one functioning tank remained; regular unleaded gas was transferred to that tank so that some gas sales could continue. During installation of the new tanks, soil contamination was discovered near the area of the old pumps. Hometown then took steps to remediate the contaminated area. The remediation required the complete removal of the old islands and pumps and, in part because of the extensive work required, during this same approximate period Hometown also did some station remodeling, installing a new canopy, and new lights, islands and pumps. All the tank replacement, remediation, and remodeling took place from November 1990 through July 1991.

Jungbluth sued Hometown seeking damages for losses incurred during the period of excavation and remodeling. Jungbluth alleged that Hometown "failed to notify the Plaintiff at least ninety (90) days prior to substantially changing the competitive circumstances

of MICHAEL JUNGBLUTH'S dealership." At the trial, Jungbluth offered evidence that the construction disrupted his business. Although he was able to supply his customers with some gas during all but three days of the construction, he was only able to supply one grade of gas. Because of the construction, his customers were sometimes unable to tell whether the station was open. Jungbluth maintained that the lack of certainty regarding his operations kept customers away, and that sales of convenience store items, auto repair items, and labor for repairs also suffered. The trial court agreed and granted Jungbluth judgment for $4,666.38 in damages and $21,000 in attorney fees.

Jungbluth brought his action under the WFDL. The statutes of the WDFL at issue in this case, in relevant part, provide:

> **135.03 Cancellation and alteration of dealerships.** No grantor, directly or through any officer, agent or employe, may terminate, cancel, fail to renew or *substantially change the competitive circumstances of a dealership agreement* without good cause.

(Emphasis added.)

> **135.04 Notice of termination or change in dealership.** Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or *substantial change in competitive circumstances*.

(Emphasis added.) It is undisputed that the agreement between Jungbluth and Hometown was a dealership agreement. It is also undisputed that Hometown failed to provide Jungbluth with 90 days' prior written notice

of the tank replacement and remodeling. Jungbluth claimed that this failure to provide notice violated § 135.04, STATS., because Hometown's actions produced a "substantial change in competitive circumstances."

The trial court concluded that Hometown's actions substantially changed Jungbluth's competitive circumstances and, therefore, that Hometown's failure to provide Jungbluth with 90 days' prior written notice violated § 135.04, STATS. The trial court rejected Hometown's argument that § 135.04 must be read in conjunction with § 135.03, STATS., to require 90 days' notice when the grantor substantially changes the competitive circumstances *of the dealership agreement*. Hometown had contended that no prior notice was required because fuel tank replacement and station remodeling were allowed under the dealership agreement. Thus, Hometown maintained, its actions had not caused a "substantial change in competitive circumstances" *of their dealership agreement*.

We conclude that the notice requirement of § 135.04, STATS., applies to a substantial change in competitive circumstances *of a dealership agreement*. We also conclude that, in this case, no substantial change in competitive circumstances of the dealership agreement occurred because Hometown's actions were allowed under its agreement with Jungbluth.

## II. DISCUSSION

This appeal involves the meaning of a statute and, as such, presents a question of law. *See DOR v. Milwaukee Brewers Baseball Club*, 111 Wis. 2d 571, 577, 331 N.W.2d 383, 386 (1983). We decide questions of law independently without deference to the trial court.

*Ball v. District No. 4 Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

This court may not resort to statutory construction if the statute is clear on its face. *H.F. v. T.F.*, 168 Wis. 2d 62, 70 n.6, 483 N.W.2d 803, 806 n.6 (1992). However, if a statute "is ambiguous, that is, if 'reasonably well-informed persons could understand it in more than one way,' the rules of statutory construction 'require us to look at the statutory context, subject matter, scope, history and object to be accomplished.'" *Continental Casualty Co. v. Milwaukee Metro. Sewerage Dist.*, 175 Wis. 2d 527, 531, 499 N.W.2d 282, 283 (Ct. App. 1993) (citation omitted). In this case, the parties' arguments do present two reasonably well-informed understandings of § 135.04, STATS. The statute is ambiguous. As we recently explained:

> "[A]mbiguity can be created by the interaction of two separate statutes." Where statutes on the same subject conflict or are inconsistent, this court must make every effort to harmonize them in order to give effect to the purpose of each statute. In interpreting an ambiguous statute, a court "may insert words necessary or reasonably inferable to avoid an absurd result."

*Trewhella v. Fiedler*, 185 Wis. 2d 499, 513-514, 517 N.W.2d 689, 695 (Ct. App. 1994) (citations omitted), *aff'd on other grounds*, 193 Wis 2d 168, 532 N.W.2d 690 (1995).

Section 135.04, STATS., states that a grantor must provide a dealer "at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances." Unlike § 135.03, STATS., § 135.04 does not explicitly refer to the termina-

tion, cancellation, nonrenewal or substantial change in competitive circumstances *of a dealership agreement.* We conclude, however, that such a reference is implicit. To harmonize the statutes, effect their purpose, and avoid absurd results, we insert the words "of a dealership agreement" to achieve the proper reading of § 135.04.

Initially, although we recognize that the title of a statute is not part of the statute, *see* § 990.001(6), STATS., "titles may, nonetheless, be indicative of legislative intent." *Continental Casualty*, 175 Wis. 2d at 532, 499 N.W.2d at 284. Here, we note that the title of § 135.04, STATS., is "Notice of termination or change *in dealership.*" (Emphasis added.) Section § 135.02(3), STATS., defines a "dealership" as "a contract or agreement . . . between two or more persons." Section 135.02(3). Thus, a dealership and a dealership agreement are synonymous for purposes of the statute.

A failure to read the phrase "of a dealership agreement" into § 135.04, STATS., would be unreasonable. In addition to referring to "substantial change in competitive circumstances," § 135.04 states that a grantor must give notice of "termination, cancellation, nonrenewal." Of what? Explicitly, the statute does not say. Logically, however, the only thing that could be cancelled, terminated or nonrenewed would be the dealership agreement itself.

Further, for the statute to effect its apparent purpose, the phrase "of a dealership agreement" also must be inserted to encompass the requirement of notice for a "substantial change in competitive circumstances." As we noted in *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 574, 431 N.W.2d 721, 724

(Ct. App. 1988), the WFDL, according to § 135.025(2), STATS., was enacted to " 'promote the compelling [public] interest . . . in fair business relations between dealers and grantors' and to 'protect dealers against unfair treatment by grantors . . . .' " We also noted that § 135.03, STATS., was enacted to further those goals. *Id.* Now, in this case of first impression, we must construe § 135.04, STATS., in conjunction with § 135.03. We do so mindful that the WFDL is to be "liberally construed and applied to promote its underlying remedial purposes and policies." Section 135.025(1). Moreover, when interpreting a statute, "we consider the entire section of a statute and related sections in its construction or interpretation." *Continental Casualty*, 175 Wis. 2d at 532, 499 N.W.2d at 284.

We agree with Hometown that not inserting the phrase "of a dealership agreement" into the reading of § 135.04, STATS., would create an unworkable dealership arrangement that would undermine the "compelling interest of the public in fair business relations between dealers and grantors." *See* § 135.025(2)(a), STATS. Otherwise, for example, a grantor could be required to give a dealer 90 days' prior written notice of a competitor commencing business across the street. After all, under such circumstances, there would be a substantial change in the dealer's competitive position. The grantor then would be liable if it failed to give proper notice, even if the grantor itself had not known of the competitor's plans. Although the WFDL protects dealers against unfair treatment by grantors, § 135.04 cannot be read to protect dealers from actions of independent third parties beyond the grantor's influence or control. Moreover, grantors often can and do take actions that "substantially change the competitive circumstances" of their dealers. Nothing in

459

the WFDL suggests, however, that before a grantor raises prices, changes products, or modifies a marketing strategy, it would have to give notice to each dealer in cases where the potential for such changes is provided by the dealership agreement.

While this issue is one of first impression in Wisconsin's state appellate courts, we note that our reading of § 135.04, STATS., is consistent with the construction of that statute in *Lee Beverage Co., Inc. v. I.S.C. Wines of California, Inc.*, 623 F. Supp. 867 (E.D. Wis. 1985). In that case, Lee Beverage was an exclusive dealer for the grantor, United Vintners. United sold some of the product lines for which Lee was the exclusive dealer to I.S.C. Wines. *Id.* at 868. I.S.C. then notified Lee that it would not continue Lee's dealership for the product lines it (I.S.C.) had purchased from United. *Id.* I.S.C. did not give Lee any notice of its decision to discontinue the distributorship agreement for those product lines. *Id.*

Lee sued I.S.C. and United, claiming that its dealership for the product lines sold by United to I.S.C. was being terminated without good cause, in violation of § 135.03, STATS. The court disagreed, reasoning that I.S.C.'s decision was motivated by sound financial considerations and that such considerations constituted good cause within the meaning of § 135.03. *Id.* at 871. The court held, however, that even though there had been no violation of § 135.03, United's failure to give Lee prior written notice of its action was a violation of § 135.04, STATS. *Id.* Significantly, the court held that United was liable to Lee for "any damages resulting from [United]'s failure to give notice to [Lee] of a substantial change in the competitive circumstances *of their distributorship agreement as required by [§ 135.04]*." *Id.* (emphasis added).

460

Much of the analysis in *Lee Beverage* relies on *St. Joseph Equipment v. Massey-Ferguson, Inc.*, 546 F. Supp. 1245 (W.D. Wis. 1982). Jungbluth argues that *St. Joseph* suggests a different result than the one we arrive at here. We disagree.

In *St. Joseph*, the dealer, Massey-Ferguson, withdrew entirely from the North American market for construction machinery. The grantor, St. Joseph, sought relief under the WFDL, but the court held that Massey-Ferguson's decision to withdraw from the entire market constituted good cause under § 135.03, STATS. *Id.*, 546 F. Supp. at 1248. The court held, however, that § 135.04, STATS., should be interpreted to require 90 days' prior written notice of the termination of the dealership, even if that termination is for good cause. *Id.*, 546 F. Supp. at 1249. *St. Joseph* is distinguishable from the instant case because it involved termination of a dealership with good cause, but without notice. *St. Joseph* is consistent with our conclusion here, however, because the court held § 135.04 to require 90 days' prior notice of termination *of the dealership agreement.*

Next, we must consider whether Hometown's actions in replacing the tanks and remodeling the station constituted a substantial change in the dealership agreement such that notice was required. In *Super Valu Stores*, 146 Wis. 2d at 574-77, 431 N.W.2d at 724-25, the dealer, D-Mart, a Wisconsin Rapids grocery store, had a dealership agreement with the grantor, Super Valu. *Id.* at 570, 431 N.W.2d at 723. When Super Valu planned to open another store in Wisconsin Rapids, D-Mart claimed that the plan violated the WFDL. *Id.* at 570-71, 431 N.W.2d at 723. This court affirmed the trial court's rejection of D-Mart's claim, noting that the agreement between Super Valu and D-

Mart specifically authorized "Super Valu to franchise other stores whenever and wherever it wishe[d]." *Id.* at 576, 431 N.W.2d at 725. The court reasoned that "[c]ompliance with the express terms of the dealership agreement cannot give rise to a violation of [§ 135.03, STATS.]" *Id.* at 577, 431 N.W.2d at 725.

That holding is dispositive. It is undisputed that the dealership agreement permitted Hometown to replace fuel tanks and to remodel the station. Because Hometown did not violate the agreement, it did not "substantially change the competitive circumstances" of the agreement. Therefore, no prior written notice was required under the WFDL. Thus, we conclude that the trial court should have entered judgment for Hometown.

*By the Court.*—Judgment reversed and cause remanded.