Michael JUNGBLUTH, Plaintiff-Respondent-Petitioner,

v.

HOMETOWN, INC., a Wisconsin Corporation, Defendant-Appellant.

Supreme Court

*No. 94–1523–FT. Oral argument February 27, 1996.—Decided May 23, 1996.*

(Also reported in 548 N.W.2d 519.)

For the plaintiff-respondent-petitioner there were briefs by *Frank R. Terschan* and *Terschan & Steinle, Ltd.*, Milwaukee and oral argument by *Frank R. Terschan.*

For the defendant-appellant there was a brief by *Eric J. Van Vugt, Michael D. Zeka* and *Quarles & Brady*, Milwaukee and oral argument by *Eric J. Van Vugt.*

JON P. WILCOX, J.   The nature of this controversy involves a statutory interpretation of the Wisconsin Fair Dealership Law (WFDL), Wis. Stat. Ch. 135 (1993-94).  The plaintiff-respondent-petitioner Michael Jungbluth (Jungbluth) seeks review of a published decision of the court of appeals, *Jungbluth v. Hometown, Inc.*, 192 Wis. 2d 450, 531 N.W.2d 412 (Ct. App. 1995), reversing a judgment of the circuit court which had awarded Jungbluth damages and attorney fees totalling over $25,000, for the defendant-appellant Hometown, Inc.'s (Hometown) violation of the 90-day notice requirement in Wis. Stat. § 135.04[1] (1993-94).[2] Finding the statute at issue to be ambiguous, the court

---

[1] Section 135.04 provides in relevant part as follows:

**Notice of termination or change in dealership.** Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances.

[2] All future references to Wis. Stats. will be to the 1993-94 statutes unless otherwise indicated.

322

of appeals opined that the notice requirement of Wis. Stat. § 135.04 applies to a substantial change in the competitive circumstances *of a dealership agreement*. *Jungbluth*, 192 Wis. 2d at 456. The appellate court further held that because Hometown's conduct was permitted under the terms of the lease agreement, no substantial change in competitive circumstances of the dealership agreement had occurred. *Id.* at 462.

On review before this court, Jungbluth raises two issues for our consideration. The first question is a very narrow one, and requires us to consider whether the court of appeals' attachment of the phrase "of a dealership agreement" on the end of the "substantial change in competitive circumstances" language in Wis. Stat. § 135.04 conflicts with the remedial purpose underlying the WFDL, as enunciated by the legislature. In accord with the well-established goal of statutory interpretation, we conclude that the insertion of the phrase "of a dealership agreement" within the statute would profoundly undermine the expressed intent of the legislature. The decision of the court of appeals unnecessarily confers power upon the grantor, a party the legislature has already concluded enjoys superior bargaining power, at the expense of the inherently inferior dealer.

The second issue before this court requires us to determine whether Hometown's conduct substantially changed the competitive circumstances of Jungbluth's dealership so as to require notice pursuant to Wis. Stat. § 135.04. Based upon the facts before us, we conclude that the seven-month period of construction, during which Hometown replaced the fuel storage tanks and embarked upon an extensive remodeling of the service station premises, constituted a substantial change in competitive circumstances. As such, Hometown was

required to provide Jungbluth with 90 days' prior written notice as stated in § 135.04, before undertaking such action. We therefore reverse the court of appeals' decision to the contrary.

The relevant facts on this appeal are uncontested. In September 1990, Jungbluth and Hometown executed a lease agreement and a representative agreement by which Jungbluth would operate a service station owned by Hometown and located in New Berlin. Jungbluth had engaged in the ownership and operation of service stations in the Milwaukee suburbs since the early 1980's. Under the terms of the dealership agreement, Hometown had reserved the right to install underground fuel storage tanks; and though not expressly articulated, Jungbluth does not contest Hometown's authority to remodel the service station. At the time the dealership agreement was signed, the station consisted of three service bays, a business office and convenience store, a lighted, paved driveway with access area, two gasoline islands equipped with pumps, eight dispensing hoses, and three grades of gasoline.

During the early part of October 1990, while Jungbluth was preparing to begin operation and promotion of the station, Hometown conducted routine testing on the underground gasoline storage tanks. Although the initial tests yielded inconclusive results for tank defects, Hometown was aware at that time that the tanks may have to be replaced. Rather than informing Jungbluth of this potential delay in operations, Hometown turned over control of the pumps to him on October 31, 1990. Shortly thereafter, additional tests conducted on November 7, 1990, confirmed that the tanks were leaking and would have to be replaced. In accord with federal and state regulation, Hometown immediately undertook the appropriate action to

replace the tanks, informing Jungbluth that such a process typically required a window of two to four weeks.

During this period of tank replacement, soil contamination was discovered in the area near the old pumps. Steps to remediate the contaminated area were immediately undertaken by Hometown. As this work progressed, Hometown unilaterally decided to implement a service station remodeling plan, without any prior notification to Jungbluth. The renovations consisted of a new canopy, lights, islands and pumps. The remediation, tank replacement and remodeling involved a construction period which spanned from November 1990 through July 1991. The seven-month renovation of the station caused a substantial disruption in Jungbluth's business, as his consumer fuel availability was reduced to one functioning pump providing regular unleaded gasoline, and the station premises were in constant disrepair.

Thereafter, Jungbluth brought this action under the WFDL seeking damages for the losses incurred during the extensive period of excavation, a project initiated by Hometown without notification, as required by Wis. Stat. § 135.04. The complaint alleged that Hometown had "failed to notify the Plaintiff at least ninety (90) days prior to substantially changing the competitive circumstances of MICHAEL JUNG-BLUTH'S dealership." *Jungbluth*, 192 Wis. 2d at 454-55. A trial to the court was held in October 1993, the Honorable Michael J. Skwierawski presiding. Jungbluth presented evidence which demonstrated that the disarray of his service station operations precluded him from realizing sales of gasoline, convenience-store goods, auto repair items, and labor charges associated with auto repair. The circuit court concluded that

Hometown's actions had substantially changed Jungbluth's competitive circumstances, and thus, their failure to provide 90 days' prior written notice had violated Wis. Stat. § 135.04. *Id.* at 456. The court affixed Jungbluth's damages at $4,666.38, and awarded $21,000 in attorney fees as permitted by the fair dealership law. *Id.* at 455; *see also* Wis. Stat. § 135.06.

The court of appeals reversed the decision of the circuit court, holding that the phrase "of a dealership agreement" should be inserted into Wis. Stat. § 135.04 so as to harmonize what the court felt was an ambiguous section with Wis. Stat. § 135.03, while still remaining within the meaning and intent of the legislature. *Jungbluth*, 192 Wis. 2d at 458. The appellate court's conclusion arose from the argument as advocated by Hometown, in which it claimed that § 135.04 must be read in conjunction with § 135.03[3] to require 90 days' notice when the grantor substantially changes the competitive circumstances *of the dealership agreement*. *Id.* at 456.

The court thereafter considered the question of whether Hometown's actions constituted a substantial change in the competitive circumstances of Jungbluth's dealership agreement. Contemplating the fact that fuel tank replacement and service station remodeling were allowed under the agreement, the court of appeals concluded that no substantial change in the competitive circumstances of the dealership agreement had occurred, and thus, the notice requirement

---

[3] Section 135.03 provides in relevant part as follows:

**Cancellation and alteration of dealerships.** No grantor, directly or through any officer, agent or employe, may terminate, cancel, fail to renew or substantially change the competitive circumstances *of a dealership agreement* without good cause.

(Emphasis added.)

expressed in Wis. Stat. § 135.04 had not been triggered. *Id.* at 462.

An interpretation of the meaning of a statute presents a question of law. *J.A.L. v. State*, 162 Wis. 2d 940, 962, 471 N.W.2d 493 (1991). As such, we employ a de novo standard of review in ascertaining the intent of the legislature. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537-38, 345 N.W.2d 389 (1984). This court's first resort is to the plain language of the statute itself. If the meaning of the statute is plain, we are prohibited from looking beyond the language to ascertain its meaning. *Marshall-Wis. Co., Inc. v. Juneau Square Corp.*, 139 Wis. 2d 112, 133, 406 N.W.2d 764 (1987). The duty of the court is merely to apply that intent to the facts and circumstances of the question presented. *J.A.L.*, 162 Wis. 2d at 962. If and only if the language of the statute does not clearly or unambiguously set forth the legislative intent, however, will this court construe the statute so as to ascertain and carry out the legislative intent. *Green Bay Redev. Auth. v. Bee Frank Inc.*, 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984). In such case, we examine the history, context, subject matter, scope and object of the statute. *Id.* In the exercise of this process, we are guided by a fundamental axiom of judicial construction which is to avoid any result that would be absurd or unreasonable. *Id.*

I.

The first issue that we address is whether the court of appeals' insertion of the phrase "of a dealership agreement" into Wis. Stat. § 135.04 is at odds with the legislative purpose and intent of the fair dealership law. We conclude that indeed it is.

327

In drafting the regulatory framework of the WFDL, the legislature very clearly articulated the intent and purpose to be embodied within the statute:

(2) The underlying purposes and policies of this chapter are:

(a) To promote the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis;

(b) To protect *dealers* against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships;

(c) To provide dealers with rights and remedies in addition to those existing by contract or common law;

*See* Wis. Stat. § 135.025(2) (emphasis added). In addition, in Wis. Stat. § 135.025(1), the legislature sought to ensure that this statutory section would be "liberally construed and applied to promote its underlying remedial purposes and policies."[4]

In light of this legislative directive, we consider the ramifications of the appellate court's expansion of the statutory language at issue. In this case, the court held that the notice requirement of Wis. Stat. § 135.04 applies to a substantial change in competitive circumstances *of a dealership agreement, Jungbluth,* 192 Wis. 2d at 456, and because Hometown's conduct was permitted under the parties' contract, no violation of the

---

[4] *See also May v. Wheelabrator Corp.*, 811 F.Supp 416, 418 (E.D. Wis. 1993) (recognizing the WFDL's remedial purpose of protecting dealers from economically superior grantors); *Meyer v. Kero-Sun, Inc.*, 570 F.Supp 402, 405 (W.D. Wis. 1983) (same).

notice provision had occurred. *Id.* If this court were to adopt such a reading of § 135.04, a grantor would not be required to provide a dealer with 90 days' prior written notice unless the grantor's actions substantially altered a specific term of the dealership agreement. Therefore, as long as the dealership agreement, as drafted by the grantor, provides the basis for the grantor's conduct, notice will not be required, despite the patently disadvantageous position into which a dealer may be placed. It is this result that we must consider in the present case.

Jungbluth asserts that the appellate court's decision has undermined the intent of the legislation because it seeks to protect a piece of paper, the dealership agreement, rather than the individual business person, or *dealer*, who inherently occupies a position of inferior economic and inferior bargaining power. *See* Wis. Stat. § 135.025(2)(b). We agree. By insulating the dealership agreement, the court of appeals' decision protects those terms which the grantor was able to "negotiate" at the onset of the business venture. The problem with this result, however, is that it overlooks a fundamental aspect of the nature of the grantor-dealer relationship.

The dealership agreement is generally drafted by the grantor, who is in a position of both superior economic and superior bargaining power.[5] The result of

---

[5] Though confronted with a case involving Wis. Stat. § 135.03, Judge Shabaz, in *Meyer v. Kero-Sun, Inc.*, 570 F.Supp 402 (W.D. Wis. 1983), recognized one of the primary purposes of the WFDL as protecting the dealer, stating:

The WFDL is a legislative scheme designed to protect the inherently weaker grantee of a dealership from the power of the stronger grantor. *Designs in Medicine, Inc. v. Xomed, Inc.*, 522 F.Supp 1054 (E.D. Wis. 1981). It is fair to say that the legislature viewed dealer-

this disparity in the parties' relative positions is identifiable in the terms of the dealership agreement. Judicial protection of the terms of the agreement, rather than the individual dealer, or his business, systematically elevates the rights of the grantor over those of the dealer. We find that this outcome runs contrary to the explicit purpose of the WFDL "[t]o protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships." *See* Wis. Stat. § 135.025(2)(b).

A decision which clearly strengthens the relative position of grantors at the expense of dealers does not embrace the spirit of the fair dealership law. We cannot conclude that the WFDL was formulated to simply protect the dealership agreement. Limiting the protective scope of this regulatory scheme to the terms of the grantor-generated contract obfuscates the question of who should be protected by the statute. While we recognize that the dealership agreement is essential in defining the various terms of the business relationship between the parties, we are also mindful that the relationship itself can be one-sided, typically characterized by unequal bargaining power and economic dependence.[6] Therefore, one should not focus merely upon

---

ship arrangements as contracts of adhesion, the grantee being in no position to resist the terms that the grantor might wish to impose, and attempted to equalize the bargaining position of the grantee.

*Id.* at 405.

[6] Recognizing the disparity associated with the parties' relative positions at the bargaining table, the legislature sought to protect a dealer from the unscrupulous inclusion of overreaching provisions within a dealership agreement, in Wis. Stat. § 135.025(3), which states: "The effect of this chapter may not be varied by contract or agreement. Any contract or agreement

contractual provisions. By doing so, the shared financial interests and interdependence which creates a community of interest among the parties may be overlooked.

The interpretation of Wis. Stat. § 135.04 offered by the court of appeals fails to protect dealers in the day to day operations of their respective businesses.[7] The statutory notice requirement provided in § 135.04 is designed to afford the dealership the opportunity to react and protect itself from the potentially devastating affects of an overreaching grantor, who with superior bargaining power, changes the competitive circumstances, not of the dealership agreement, but rather the business itself. The principle that the notice

---

purporting to do so is void and unenforceable to that extent only."

[7] Jungbluth expresses his concern that following the appellate court's decision in this case, the grantor has been provided with a virtual blueprint to terminate a dealership at any time, without good cause as required under Wis. Stat. § 135.03, and with absolute disregard for the policies which underlie the WFDL.

Stated simply, the economically superior grantor may undértake conduct, without notice to the dealer, which substantially disrupts the daily operations of the dealership, rendering it financially crippled. As long as the action is permitted within the four corners of the agreement, the grantor may "contractually" put the dealership out of business with total impunity. Worse yet, in the case of a multi-year lease agreement, the dealer would thereafter be faced with a potential breach of contract claim by the grantor.

We find that it would be unreasonable to assume that the legislature intended the dealership agreement to garner such protection at the expense of the dealer. The result as depicted here would be absurd in light of the remedial purpose of the WFDL.

requirement is designed to protect the small business person, not the document memorializing the parties' arrangement, was recognized in the case of *St.Joseph Equip. v. Massey-Ferguson, Inc.*, 546 F.Supp 1245 (W.D. Wis. 1982),[8] wherein Judge Evans explained:

> Even in cases such as this one, where there are no deficiencies for a dealer to cure, it furthers the Act's policy of fairness in business relations to require the grantor to provide the dealer with notice of an impending change in his *business circumstance*. For even if the dealer is without power to rectify the problem and forestall future changes in his business operations, fairness would provide him with a reasonable opportunity to arrange for the orderly accomplishment of whatever changes are to be wrought including, if necessary, the investigation of new dealership opportunities.

---

[8] The *St.Joseph* decision involved a grantor's withdrawal from the construction machinery market in North America, prompting a suit by the dealer alleging violation of the WFDL, in that the decision terminated the plaintiff or changed the competitive circumstances of its dealership agreement without good cause and without requisite notice. *Id.* at 1246. The court concluded that where "a grantor makes a non-discriminatory product withdrawal over a large geographic area, that, without more, is not a violation of § 135.03, Wis.Stats." *Id.* at 1248. Though holding that the market withdrawal constituted good cause under § 135.03, Judge Evans ordered further proceedings to determine whether the grantor had fully complied with the notice requirements of Wis. Stat. § 135.04. *Id.* at 1251. The court indicated that the statute should be interpreted to require 90 days' prior written notice of the termination of the dealership, even if the termination is for good cause, thereby highlighting the independent nature of a cause of action under § 135.04. *Id.* at 1249.

*Id.* at 1249. (Emphasis added). The significance of the statutory notice requirement is virtually self-evident. It is designed to afford the economically inferior dealership the opportunity to mitigate financial loss in the aftermath of an arbitrary imposition of substantial change by the grantor, furthering the statute's policy of insuring fairness in dealership relations.[9]

Hometown's position that the remodeling project was permitted under the dealership agreement, and therefore required no notice, despite the project's dramatic effect on Jungbluth's business circumstances, contravenes the equitable principles encompassed within the notice provision of the WFDL. The argument is based upon the court of appeals' interpretation of Wis. Stat. § 135.04. Finding that interpretation unworkable in the daily operations of the business community, we conclude that the appellate court's insertion of the phrase "of a dealership agreement" into the "substantial change in competitive circumstances" language in Wis. Stat. § 135.04 is in direct conflict with the clearly pronounced objectives provided by the legislature within the WFDL. Judicial protection of the terms of a dealership agreement, though meaningful in

---

[9] It is undisputed that Hometown did not comply with the notice provision of Wis. Stat. § 135.04. The failure to furnish Jungbluth with notice deprived him of an opportunity to contemplate a multitude of alternatives to mitigate the potential damages to his business or consider the investigation of new dealership prospects. *See also Designs in Medicine, Inc. v. Xomed, Inc.*, 522 F.Supp 1054, 1057 (E.D. Wis. 1981) (stating that the court has "consistently held that the statutory notice requirement must be strictly complied with and that failure of a grantor to give the proper notice under the statute, in and of itself, constitutes a violation of the statute").

many other respects, should not come at the expense of the dealer, a party whom the legislature has sought to empower with an equalized bargaining position relative to that of the grantor. We disagree with the court of appeals' reasoning on this issue.

## II.

Next, we consider whether Hometown's conduct substantially changed the competitive circumstances of Jungbluth's business so as to require proper notice under Wis. Stat. § 135.04. Reasoning that a dealership is nothing more than a dealership agreement, the court of appeals concluded that because the agreement permitted Hometown to replace fuel tanks and remodel the station, it had not substantially changed the competitive circumstances *of the dealership agreement*, and therefore, no notice was required. *Jungbluth*, 192 Wis. 2d at 462. We disagree with this conclusion, however, as it is premised upon the appellate court's erroneous insertion of the phrase "of the dealership agreement" into § 135.04, as discussed above. Moreover, the quoted authority from *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 431 N.W.2d 721 (Ct. App. 1988), relied upon by the appellate court, is not controlling here, as the holding in that case involved a grantor's alleged violation of Wis. Stat. § 135.03, not the notice provision in § 135.04 before us today.

We agree with the finding of the circuit court that the actions of Hometown substantially changed the competitive circumstances of Jungbluth's dealership, and therefore reverse the court of appeals' holding to the contrary. The evidence presented at trial overwhelmingly supports Judge Skwierawski's conclusion that Jungbluth's competitive circumstances were dra-

matically affected by the construction that took place. Photographs contained within the record clearly depict the station as completely torn apart, resembling a virtual combat zone.

For seven months, the dealership was under construction, and both lower courts concluded that Jungbluth's customers, at times, were unable to determine whether or not the service station was open for business. After reviewing the photographic evidence, it certainly would not appear to be open to a mere passerby. The dealership went from offering three grades of gasoline to merely one, and from two lighted gasoline islands in front of the premises to one on the side of the building. The once lighted, paved driveway and service area was transformed into an unlighted obstacle course in which patrons would have to traverse a moat-like trench through gravel and mud to reach a temporary office housed within a service bay. Furthermore, Jungbluth was forced to sell convenience store items out of a secondary service bay, which in turn, limited his capacity to perform auto repairs.

The nature of the change in Jungbluth's competitive circumstances, which occurred as a result of the extensive remodeling project undertaken by Hometown was substantial, inhibiting his ability to operate his dealership on a daily basis. Jungbluth was unable to develop his clientele as well as the reputation of his business, as he was powerless in his attempts to realize profit from the sale of gasoline, convenience-store goods, auto repair items, or labor associated with auto repairs. Moreover, his competitive position among the five other service stations located within one mile of his dealership was certainly diminished given his continued inability to fully service the limited number of customers that he was able to attract.

We find that the only reasonable manner in which these facts can be viewed is to conclude that the seven-month service station remodeling project substantially changed the competitive circumstances of Jungbluth's dealership. The fact that the dealership agreement permitted Hometown to act in this regard did not relieve it from the obligation of formal notification prior to the impending action.

In furtherance of the well-defined policies and purposes articulated within the WFDL, we conclude that Hometown was required to provide 90 days' prior written notice in accord with Wis. Stat. § 135.04. Having failed to comply with this statutory mandate, we conclude that Jungbluth is entitled to the award of damages and attorney fees as prescribed by the circuit court.

*By the Court.*—The decision of the court of appeals is reversed.