**MIDWEST GREAT DANE TRAILERS, INC., Plaintiff,**

v.

**GREAT DANE LIMITED PART-NERSHIP, dba Great Dane Trailers, Defendant.**

No. 97–CV–1111.

United States District Court,
D. Minnesota.
Fourth Division.

Sept. 19, 1997.

Briggs & Morgan, P.A., by James J. Long, and Kerry L. Bundy, Minneapolis, Minnesota, appeared on behalf of defendant.

Warchol, Berndt, and Hajek, P.A., by John Warchol, and Chris Berndt, Minneapolis, Minnesota, appeared on behalf of plaintiff.

### *ORDER*

ALSOP, Senior District Judge.

This matter is before the Court upon Great Dane Trailers' ("Great Dane") motion to dis-

miss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Great Dane seeks dismissal of each of the four counts in Midwest Great Dane Trailers, Inc.'s ("Midwest") Complaint on the grounds that the facts as alleged therein fail to state a claim on which relief may be granted. The Court will grant in part and deny in part Great Dane's motion.

## BACKGROUND

Great Dane is a limited partnership which manufactures Great Dane Trailers, a brand of semi-trailer trucks which are sold nationwide by a network of dealers/distributors. Midwest is a Minnesota corporation which has been an authorized dealer of Great Dane Trailers since 1975. Great Dane and Midwest have entered into successive annual dealership agreements since that time, the most recent of which was effective as of January 1, 1997. The relevant portions of that contract are as follows. Clause One of the Agreement is titled "Area of Responsibility" and provides that Midwest is "primarily responsible for the sale of Great Dane products in the territory shown on Exhibit 1." Midwest's Area of Responsibility, according to that Exhibit, consists of the entire states of North Dakota and Minnesota, as well as a portion of Wisconsin. Clause One further states, "Distributor does not have the exclusive right to sell Great Dane products within such territory nor is Distributor limited to sales within such territory." Clause Two contains a minimum sales responsibility for Midwest within its Area of Responsibility, and subsection (c) of Clause Twenty–Two lists failure to meet this sales responsibility as a potential ground for termination of the agreement. Clause Four mandates that Midwest will maintain an adequate inventory of parts for, and provide proper service to, its customers as well as all Great Dane Trailer owners within the Area of Responsibility. Likewise, Clause Twenty of the Agreement requires that Midwest handle complaints from all owners of Great Dane Trailers so to maintain the good will of both the distributor and the manufacturer, and requires that Midwest maintain an adequate service facility for the provision of warranty and repair services. Clause Thirty is an integration clause.

According to the Complaint, on March 19, 1997, Great Dane advised Midwest that it had appointed Crossroads Trailers, Inc. as an authorized dealer of Great Dane products for a portion of Minnesota. Count One of the Complaint alleges that such an action violates the Minnesota Heavy and Utility Equipment Manufacturer and Dealers Act ("MHUEMDA"), Minn.Stat. § 325E.068, et seq., which prohibits acts that "substantially change the competitive circumstances of a dealership agreement" without good cause, Minn.Stat. § 325E.0681, subd. 1. Count Two of the Complaint alleges that Great Dane's appointment of a new dealer within Midwest's Area of Responsibility amounted to a intentional and wrongful interference with Midwest's current and prospective business relationships. Count Three of the Complaint alleges that Great Dane's appointment of Crossroads effectuated a breach of its dealership contract with Midwest. Midwest alleges that the contract either unambiguously grants it a right to sell in its Area of Responsibility free of the physical presence of other dealerships, or, at the very least, is ambiguous as to Great Dane's right to appoint a new dealer in Midwest's Area of Responsibility. Midwest contends that to the extent the agreement may be ambiguous as such, the other provisions of the contract, as well as extrinsic oral and written representations by Great Dane suggest that both parties did not intend for Great Dane to have unfettered discretion in the appointment of new dealers within the Area of Responsibility. Count Four of the Complaint alleges, in the alternative, that extra-contractual promises by Great Dane not to appoint new dealers in the area without notice and opportunity for cure by Midwest, induced justifiable reliance by Midwest in its business decisions. Breach of those promises, Midwest contends, caused it damages.

Great Dane responds that the agreement is unambiguous as to Great Dane's uninhibited right to appoint new dealers within Midwest's Area of Responsibility. As such, Great Dane contends that, (1) Midwest has failed to state a claim of breach of contract

since Great Dane was acting pursuant to its rights under the contract; (2) that the agreement between Great Dane and Midwest was fully integrated, that all extrinsic agreements were merged into the final document and that therefore the only promises to which Great Dane is bound are found within the four comers of the dealership agreement; (3) that by acting pursuant to its contractual rights it could not have "wrongfully or intentionally" interfered with Midwest's third-party contractual relationships, that a party cannot tortiously interfere with what is essentially its own contract, and that Midwest is unable to identify any specific contractual relationships with which Great Dane interfered; (4) that by acting pursuant to its rights under the agreement, it could not have caused a "substantial change in the competitive circumstances of the dealership agreement" and therefore could not have violated the MHUEMDA. For these reasons, Great Dane asserts, each of Midwest's four alleged causes of action should be dismissed.

## STANDARD OF REVIEW

In evaluating a motion to dismiss for failure to state a claim, courts must accept as true the factual allegations contained in the complaint and all reasonable inferences must be drawn in favor of the nonmoving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Supreme Court has held that a court may dismiss a complaint under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) *cited in Alexander v. Peffer,* 993 F.2d 1348, 1349 (8th Cir. 1993). Motions to dismiss are granted when upon the face of the complaint there is an "insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995).

## DISCUSSION

Defendant asserted in its memoranda of law, without objection by Plaintiff, that Georgia law would apply to the breach of contract claim in accordance with the parties' contractual agreement. Minnesota law will apply to the other three claims.

As an initial matter the Court must determine whether or not the language of the agreement is ambiguous on the issue of Great Dane's authority to appoint a second distributor within Midwest's Area of Responsibility. Both parties have acknowledged in their memoranda of law and at oral argument that the ambiguity or lack thereof in the agreement is a question of law for the Court. This Court finds nothing ambiguous in the sentence, "Distributor does not have the exclusive right to sell Great Dane products within such territory" The preceding sentence, "Distributor is primarily responsible for the sale of Great Dane products in the territory ...," this Court holds, is similarly unambiguous. The assignment of primary responsibility for sales within an area is included in the contract for the benefit of the manufacturer, not the distributor. It enables the manufacturer to assume a given distributor will focus their sales in a particular region so that market demands may be adequately monitored and met. In addition to being unambiguous on its face, the "primary responsibility" language is consistent with the language "does not have the exclusive right to sell.". Plaintiff seeks an interpretation of "primarily responsible" which is inconsistent with this succeeding provision. Provisions of a contract should, whenever possible, be read as consistent with each other so that no part of the agreement is rendered unreasonable or superfluous. *See generally,* Restatement (Second) of Contracts § 203(a) and Comment f. Plaintiff's argument that Midwest may have an exclusive right to have a dealership within the Area of Responsibility without having an exclusive right to sell, is creative, but without merit.

The Court also does not find that Clause Four or Clause Twenty (Owner Complaints, Service) have any bearing on the interpretation of Clause One as urged by both Plaintiff and Defendant. Those provisions simply imply that there will be other owners of Great Dane Trailers within Plaintiff's Area of Responsibility which will need parts and service, regardless of whether they purchased

such a trailer within or without that territory. The Sales Performance requirements in Clause Two similarly do not render the nonexclusivity language of Clause One ambiguous, although the prospective difficulty in meeting these sales forecasts in light of a new, competing dealer may well be relevant in other circumstances.

## I. Count Three: Breach of Contract

### a. Breach of Dealership Agreement

■ Having determined that the disputed provisions of the contract are not ambiguous, the Court finds that the language of the agreement itself does not prohibit Great Dane from appointing an additional dealer within Midwest's area of responsibility. A breach of contract action which relies on any of the written language in the contract thus cannot be maintained. Furthermore, the Court must give effect to the integration clause and conclude that the extrinsic oral and written agreements referred to in Plaintiff's Complaint constitute inadmissible parol evidence because they alter, and are inconsistent with, the written provisions of the contract. Ga. Stat. § 13–2–2. Under Georgia law, additional obligations can not be "grafted" onto a completely integrated contract by parol evidence. *Garcia v. Unique Realty & Property Management Co., Inc.*, 205 Ga.App. 876, 424 S.E.2d 14, 17 (1992). Consequently, the appointment of an additional dealer by Great Dane does not give rise to an actionable claim for breach of the dealership agreement.

### b. Breach of Collateral Agreement

■ The Plaintiff's additional contention that some of the extrinsic agreements were sufficiently distinct and independent as to be potentially enforceable is without merit. Neither an extrinsic agreement providing for exclusivity, nor an extrinsic agreement requiring notice before appointment of new dealers can be sufficiently independent so to constitute a separate, enforceable contract in this case. Any such agreements would be clearly within the "scope" of the agreement—particularly the contested Clause One—and therefore discharged by the integration clause. See Restatement (Second) of Contracts, § 213(2).

The Georgia opinion on which Plaintiff relies, *Diamondhead Corp. v. Robinson*, 144 Ga.App. 60, 240 S.E.2d 572 (1977) acknowledges that a parol agreement which is "an independent and complete contract within itself and forms no part of the written contract," falls outside of the scope of the parol evidence rule. 240 S.E.2d at 574. The agreements which Plaintiff seeks to admit in this case, however, would necessarily comprise new "parts" to the existing contract, because they would "graft" additional obligations onto the dealership contract itself. This is because the extrinsic agreements are not "complete" within themselves. The Plaintiff in *Diamondhead* had been promised a bonus *in exchange* for reaching a certain level of sales in a given year. The act of reaching the sales level was the consideration for the bonus; the signing of the employment contract was not. Thus the distinct bargained-for-exchange which induced that employee to enter into the employment contract was not inadmissible parol evidence. In this case, Plaintiff seeks to admit the unilateral promises of Great Dane that it would either not appoint a new dealer, or would at least give Midwest notice and an opportunity to cure sales deficiencies before doing so. The Complaint does not contain reference to any separate obligation (outside of the written agreement) which Midwest undertook in consideration of these alleged promises, and unfortunately for Plaintiff, the alleged promises were not contained within the four corners of the integrated agreement. Accordingly, the Complaint alleges no consideration outside of the actual signing of the dealership agreement which could constitute consideration for a separate and distinct contract. The extrinsic statements of Great Dane are, therefore, precisely of the sort intended to be excluded by the parol evidence rule and intended to be merged into the written agreement by the integration clause. This agreement is unambiguously a nonexclusive and fully integrated dealership contract and the alleged extrinsic evidence of exclusivity or limitations on the right to appoint new dealers cannot be considered by this Court or by a jury as a

separate contract or as evidence of whether the dealership agreement has been breached.

Having ruled that the Defendant had a right under the plain meaning of the integrated contract to appoint a new dealer in Plaintiff's Area of Responsibility, such an act by Great Dane does not constitute a breach of the dealership agreement or any other agreement and thus the facts as alleged in Count Three of the Complaint do not give rise to a claim upon which relief may be granted by this court. Defendant's motion to dismiss as to Count Three of the Plaintiff's complaint will be granted.

## II. Count Four: Promissory Estoppel

■ Plaintiff's promissory estoppel claim fails for the same reasons. Inadmissible parol evidence cannot be introduced via a promissory estoppel theory. *Banbury v. Omnitrition Int'l,* 533 N.W.2d 876 (Minn.App.1995). To rule otherwise would be to render nearly all parol evidence enforceable and undermine the rule's function—to limit the parties' liabilities to those contained in a completely integrated written contract. A separate and distinct agreement again may fall outside the scope of the rule, but as noted, the extrinsic agreements to which Plaintiff refers are not sufficiently separate nor adequately distinct. A promissory estoppel claim implies, of course, that no legally enforceable agreement existed. Thus, not only were the alleged unilateral promises by Great Dane not separate or distinct, they did not constitute an agreement. This is simply another manner of stating, as noted above, that without separate consideration (which is clearly lacking when promissory estoppel is alleged) the exception to the parol evidence rule for distinct and independent contracts is not invoked. Extrinsic promises which do not amount to separate and distinct contracts can be nothing other than inadmissible attempts to add to, or alter, the written terms of an agreement in direct contravention of the parol evidence rule. The facts of Count Four of Plaintiff's Complaint as alleged fail to state a claim for promissory estoppel and Defendant's motion to dismiss as to Count Four will be granted.

## III. Count One: The Minnesota Heavy and Utility Equipment Manufacturers and Dealers Act

■ Defendant contends that a finding that the contract is unambiguous as to nonexclusivity and Great Dane's right to appoint an additional dealer is dispositive of Plaintiff's claim under the MHUEMDA, Minn. Stat. § 325E.068, et seq. Defendant's argument is premised upon an interpretation of the language in Subdivision One of § 325E.0681, which requires manufacturers to demonstrate "good cause" if they intend to "substantially change the competitive circumstances of a dealership agreement." Great Dane contends that insofar as it was acting pursuant to its rights under the dealership agreement it could not possibly be "changing the competitive circumstances" of that agreement. It cites for support an unpublished Minnesota Court of Appeals opinion, *Cunningham Implement Co. v. Deere & Co.,* 1995 WL 697555 (Minn.App.1995), as well as state and federal Wisconsin case law interpreting the very similar Wisconsin Fair Dealership Law, or "WFDL", Wis.Stat. Ch. 135 (1996); *Super Valu Stores, Inc. v. D–Mart Food Stores, Inc.,* 146 Wis.2d 568, 431 N.W.2d 721, 725 (App.1988); *Kinn v. Coast Catamaran Corp.,* 582 F.Supp. 682 (E.D.Wis.1984); *Brauman Paper Co. v. Congoleum Corp., Inc.,* 563 F.Supp. 1 (E.D.Wis.1981). Each of the Wisconsin cases held that a manufacturer acting in accordance with contractual rights could not have substantially changed the competitive circumstances of *a dealership agreement.*

Nonetheless, interpretation of this subdivision of the Minnesota statute by this Court is a matter of first impression. On its face, it is evident that "of a dealership agreement" is intended to modify the phrase "substantially change the competitive circumstances." However, had the legislature intended to limit causes of action under this part of the statute to changes in the agreement or contract itself, it would have had no need to include the phrase "competitive circumstances" and simply could have required good cause by manufacturers to "substantially change a dealership agreement" or possi-

bly, to "substantially change the competitive circumstances *in* a dealership agreement."

■ The plain meaning of the word "circumstance" helps explain why the legislature may have included it in the statute. "Circumstance" is defined as "a specific part, phase, or attribute of *the surroundings or background* or an event, fact, or thing or of the *prevailing conditions* in which it exists or takes place." Webster's Third New International Dictionary, 1968 (emphasis added). Black's Law Dictionary accordingly defines "circumstances" as "attendant facts" and "[t]he *surroundings* at the commission of an act," and cites Georgia case law for a more detailed definition: " '[c]ircumstances' are minor facts, related or accessory facts, occurrences or things which stand around, or about, which attend upon, which closely precede or follow, which surround and accompany, which depend upon, or which support or qualify a principal fact or event." 308 Black's Law Dictionary. 4th Ed., *citing Salter v. State*, 163 Ga. 80, 135 S.E. 408, 409 (1926); *See also Grams v. Independent School District No. 742*, 286 Minn. 481, 493, 176 N.W.2d 536, 543–44 (Minn.1970). It is a maxim of statutory interpretation that "[a] word must be construed in accordance with its common and approved usage unless to do so would be inconsistent with manifest legislative intent." *Lenz v. Depositors Insurance Co.*, 561 N.W.2d 559, 561 (Minn.App.1997). Construing "circumstances of a dealership agreement" in favor of dealers and according to its "common and approved usage" is hardly inconsistent with the manifest legislative intent of the statute, which was undeniably designed to protect dealers and distributors. Therefore, the Court finds that an actionable claim exists under the statute when a dealer alleges that a manufacturer has effectuated a "substantial change in competitive circumstances" without good cause, even if the alleged "change" was contractually permitted. An allegation that *the prevailing conditions, surroundings, or background* of a dealership agreement have been substantially changed without good cause sufficiently states a claim

upon which relief may be granted for the purposes of a motion to dismiss under Rule 12(b)(6).

■■ "If a statute is ambiguous, however, we must then determine the probable legislative intent and give the statute a construction that is consistent with that intent." *Tuma v. Commissioner of Economic Security*, 386 N.W.2d 702, 706 (Minn.1986). Even assuming *arguendo* that Defendant's interpretation of this subdivision is not an unreasonable one, and thus necessarily assuming that the statute is ambiguous [1], an examination of the probable intent of the legislature in implementing the MHUEMDA does not suggest a different result.

■ Minn.Stat. § 645.16 provides eight factors to be considered when ascertaining the intent of the legislature: (1) the occasion and necessity for the law; (2) The circumstances under which it was enacted; (3) The mischief to be remedied; (4) The object to be attained; (5) The former law, if any, including other laws upon the same or similar subjects; (6) The consequences of a particular interpretation; (7) The contemporaneous legislative history; and (8) Legislative and administrative interpretations of the statute. There is little doubt, if any, that the statute was passed to protect dealers from the excesses of manufacturers possessing superior bargaining power. The provisions of the statute generally confer rights upon dealers and obligations upon manufacturers. The consequences of this Court's interpretation would be simply to permit claims to survive dismissal insofar as they properly plead a substantial change in competitive circumstances. This does not mean that any dealer who experiences a minor change in the circumstances of his or her dealership will be entitled to relief. A plaintiff still must show a *substantial* change in *competitive* circumstances, and in defense, a manufacturer is permitted to show good cause. Good cause in the context of the franchisor-franchisee relationship, for example, has been found when a franchisee was deemed financially strong enough to withstand the losses associ-

---

1. When a statutory provision can be reasonably construed in two different ways, it is ambiguous as a matter of law. *Tuma v. Commissioner of*

*Economic Security*, 386 N.W.2d 702, 706 (Minn. 1986).

ated with the appointment of a new dealer and when demographics suggested a public interest in the establishment of a new dealer. *T.I.W, Inc., v. American Honda Motor Co., Inc.,* 808 F.Supp. 1399 (D.Minn.1992).

On the other hand, to interpret the subdivision as does Defendant, would produce consequences contrary to the obvious motive of a statute which affords protection to dealers and distributors. For example, Defendant could appoint many new dealers and thus create market conditions—without actually terminating Plaintiff—that would render the dealer's business entirely unprofitable. If this Court accepts Defendant's interpretation of the provision in question, the MHUEMDA would actually provide no remedy for substantial changes above and beyond what a dealer would normally have were it to raise a contract claim. The statute requires good cause and notice for termination so that, for example, the superior bargaining position of manufacturers cannot be used to enforce terminable-at-will provisions in dealership agreements. The statute thus provides an *extracontractual* remedy for terminations by manufacturers, and it is consistent, therefore, to interpret the phrase "substantial change in competitive circumstances" to permit remedies for substantial competitive changes *beyond* what was agreed upon by the parties in writing.

The trilogy of Wisconsin cases cited by Defendant in support of its interpretation are persuasive, but a much more recent statement by Wisconsin's highest court strongly suggests that this Court's interpretation is the more appropriate one. In *Jungbluth v. Hometown, Inc.,* 201 Wis.2d 320, 548 N.W.2d 519 (1996), the Wisconsin Supreme Court was asked, while interpreting the Wisconsin Fair Dealership Law, to impliedly insert the phrase "of a dealership agreement" following the phrase "substantial change in competitive circumstances" in the subdivision of its statute mandating notice and opportunity for cure prior to terminations and substantial changes. The Wisconsin Court of Appeals in that case had interpreted "circumstances of a dealership agreement" in the same manner as does Defendant and sought to "harmonize" the WFDL's notice and cure subdivision

with its good cause provision, since the latter included the phrase "of a dealership agreement" and the former did not. The Wisconsin Supreme Court was thus asked to interpret the notice and cure provision in a such a way that only substantial changes in the written agreement itself were actionable. The *Jungbluth* court overruled the Court of Appeals and declined to attach the phrase because, it held, such an interpretation ran afoul of the legislative intent behind the Fair Dealership Law. The potential consequence of such a contrary interpretation, the Court held, would be that "as long as the dealership agreement, as drafted by the grantor, provides the basis for the grantor's conduct, notice will not be required, despite the patently disadvantageous position into which a dealer may be placed." *Id.,* 548 N.W.2d at 523. The Court further ruled that a

> dealership agreement is generally drafted by the grantor, who is in a position of both superior economic and superior bargaining power. The result of this disparity in the parties' relative positions is identifiable in the terms of the dealership agreement. Judicial protection of the terms of the agreement, rather than the individual dealer, or his business, systematically elevates the rights of the grantor over those of the dealer. We find that this outcome runs contrary to the explicit purpose of the WFDL ... ... [w]e cannot conclude that the WFDL was formulated to simply protect the dealership agreement.

*Id.* at 523.

*Jungbluth* did not explicitly overrule *Super Valu,* because it was not presented with an interpretation of that part of the statute requiring good cause for substantial changes in competitive circumstances. It left unresolved the inconsistency between the Court of Appeals' interpretation of the provision requiring good cause for "substantial changes in competitive circumstances of dealership agreements" and its determination of the intent of the WFDL; it simply limited its analysis to an interpretation of the notice and cure provision consistent with the spirit of that statute. Therefore, by not explicitly rejecting the Court of Appeals' interpretation of the phrase "substantial change in competi-

tive circumstances of a dealership agreement" and simply refusing to apply it to the subdivision at issue, the Wisconsin Supreme Court clearly expounded and applied the legislative intent behind the WFDL, but left untouched the "disharmony" between the two subdivisions of the WFDL which the Court of Appeals had tried to resolve.

 Were this Court to accept Defendant's interpretation of the phrase, this Court would likewise fail to "harmonize" two provisions of the MHUEMDA. The remedy provision, § 325E.0684, does not attach the phrase "of a dealership agreement" to the phrase "substantial change in competitive circumstances" when it details the situations in which an injunction may be available. Nonetheless, this Court is not confronted with the prospect of inconsistent statutory provisions precisely because the interpretation of the good cause subdivision, which this Court adopts, disposes of any difference between § 325E.0681 and § 325E.0684—both subdivisions are properly read as protecting more than simply the piece of paper which comprises the agreement. This is not to say that the phrase "a dealership agreement" in subdivision One of § 325E.0681 is superfluous. A "circumstance" or "attendant fact" of an agreement must still have some tangible link to the contract itself, but need not be a written provision within the four corners of the document. This Court finds, as did the *Jungbluth* court, that legislation implemented to protect dealers must protect more than the provisions of the written agreement. "Judicial protection of the terms of a dealership agreement, though meaningful in many other respects, should not come at the expense of the dealer, a party whom the legislature has sought to empower with an equalized bargaining position relative to that of the grantor." *Jungbluth*, 548 N.W.2d at 524–25. Accordingly, under the MHUEMDA, manufacturers must demonstrate good cause for any "substantial change" in the *prevailing conditions* (i.e., the attendant facts), of a dealership agreement. Plaintiff has alleged in its Complaint that the appointment of a new dealer will "substantially change" the marketplace in which it operates pursuant to the dealership agreement and render sales quotas more difficult, if not im-

possible, to meet. It further alleges that such a substantial change was undertaken by Defendant without good cause. This is sufficient to state a claim for a violation of § 325E.0681. Defendant's Motion to Dismiss Count One of the Plaintiff's Complaint will be denied.

## IV. Tortious Interference with Prospective and Current Contractual Relations

The Court addresses Defendant's Motion to Dismiss Count Two last for the following reasons. The Court agrees with Defendant's contention that Defendant's failure to breach the contract is not, without more, "wrongful" such that an actionable claim for tortious interference with prospective business relations can survive a motion to dismiss. However, as noted previously, Plaintiff has stated a claim for a violation of the MHUEMDA. To the extent that it is established, as alleged, that Defendant was in violation of the statute, it would follow that Defendant would have breached a statutory duty and committed a tort. The Eighth Circuit ruled in a Missouri case that "[c]onduct breaching a contract may also amount to an independent tort leading to liability where a **separate duty** arises out of a contractual relationship. The duty claimed to have been violated may have its source **in statutes**, regulations, or considerations of public policy as developed by case law. Conduct constituting a breach of contract will constitute tortious interference where an independent duty superimposed by operation of law is breached." *American Business Interiors v. Haworth, Inc.*, 798 F.2d 1135, 1145 (8th Cir.1986) (citations omitted) (emphasis added). This Court has held as a matter of law that the contract was not breached in this case. However, the *Haworth* court went on to rule that

[a]lthough we agree with the district court that conduct breaching a contract may constitute tortious interference where the elements of the tort have been satisfied, we also concluded that Haworth in refusing to provide requested information violated duties independent of the contract. A jury could find that Haworth's refusal constituted a termination without requisite notice,

in violation of the franchise statute and contrary to the dealer manual, and that when considered along with its other conduct in helping Rainen win the JCCC job, it evinced an intention to injure ABI by interfering with its prospective business relationship.

*Id.*

The *Haworth* court's concern was with tort remedies being permitted for claims that were essentially contractual in nature, and yet the Eighth Circuit still found an actionable tort, due to the existence of an independent duty—namely one derived from a franchise statute. Here, the independent duty arises under the MHUEMDA, and there is particularly no risk of Plaintiff getting "two bites at the apple" out of a contract claim, since that claim will be dismissed. If a tortious interference claim can supplement a contract claim only if an independent duty exists which has been breached, then as long as that independent duty has allegedly been breached, the claim can certainly exist without a breach of contract. Whether or not the contract has been breached does not determine if the independent tort is actionable. Thus, contrary to Defendant's contention, a party's conduct may be improper even if it acts in accordance with contractual rights. As the *Haworth* court put it: "in some circumstances even conduct that is itself innocent may constitute unjustified interference." 798 F.2d at 1144.

Although it is true that a party cannot interfere with its own contract, Midwest has alleged that Great Dane interfered with third-party contracts and as noted, it is not the breach of the dealership which constitutes the "wrongful act" necessary for an actionable interference claim in this case. "To prevail on an interference with prospective business relationship claim under Minnesota law [a plaintiff] must prove that [the defendant] intentionally committed a wrongful act that improperly interfered with [plaintiff's] prospective business relationship." *Sip–Top, Inc. v. Ekco Group, Inc.,* 86 F.3d 827, 832 (8th Cir.1996). Under the Restatement (Second) of Torts § 766B, interference can consist of "preventing [the plaintiff] from acquiring or continuing the prospective relation." *See United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 632–33 (Minn.1982). Plaintiff in this case has alleged that Great Dane intentionally committed a wrongful act (statutory breach) that improperly interfered with prospective business relations. Reading the Complaint liberally in favor of Plaintiff, the Court finds that Midwest has effectively claimed that a statutorily prohibited "substantial change in competitive circumstances" without good cause prevented Midwest from "acquiring or continuing" prospective business relations. Although this Court has serious reservations about the likelihood of success on this claim given the necessity for evidence of *intentional interference with specific* business relations, for the purposes of a 12(b)(6) motion, Plaintiff has sufficiently stated a claim upon which relief may be granted.

A claim for tortious interference with contract requires five elements: (1) existence of a contract; (2) Defendant's knowledge of the contract; (3) Defendant's intentional interference with the contract; (4) Defendant's actions were not justified; and (5) Plaintiff suffered damages as a result. *Sip–Top, Inc. v. Ekco Group, Inc.,* 86 F.3d 827, 832 (8th Cir.1996). Plaintiff has sufficiently alleged all of the elements. This Court's finding that the statutory claim will survive the motion to dismiss suggests that for the purposes of pleading, the fact that Defendant's actions were justified under the dealership agreement is not enough to warrant dismissal of the claim. Defendant's motion to dismiss Count Two of the Plaintiff's Complaint will be denied.

Therefore, upon review of the files, motions and, proceedings herein,

**IT IS HEREBY ORDERED THAT:**

Great Dane Trailers' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED in part and DENIED in part as follows:

1. Counts Three and Four of Midwest Great Dane Trailers, Inc.'s Complaint are DISMISSED.

2. Midwest Great Dane Trailers, Inc.'s motion to dismiss Counts One and Two is DENIED.